## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.:

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY and STATE FARM
FIRE AND CASUALTY COMPANY,

       Plaintiffs,

vs.

FAKHOURY MEDICAL AND CHIROPRACTIC
CENTER, P.L.L.C., RIADH A. FAKHOURY, D.C.,
and NAGY SHANAWANY, M.D.

       Defendants.

_____/

## COMPLAINT AND DEMAND FOR A JURY TRIAL

Plaintiffs State Farm Mutual Automobile Insurance Company ("State Farm Mutual") and State Farm Fire and Casualty Company ("State Farm Fire"), bring this Complaint against Fakhoury Medical and Chiropractic Center, P.L.L.C. ("FMCC"), Riadh A. Fakhoury, D.C. ("Dr. Fakhoury"), and Nagy Shanawany, M.D. ("Dr. Shanawany") (collectively, "Defendants") and allege as follows:

## I.   NATURE OF THE ACTION

1.   This action involves an unlawful and fraudulent scheme orchestrated by Defendants to obtain payments from State Farm Mutual and State Farm Fire through the submission of thousands of medical bills, records, and related documentation for services purportedly provided to individuals involved in automobile accidents and eligible for Personal Injury Protection ("PIP") and

Medical Payments Coverage ("MPC") benefits (collectively, "No-Fault Benefits") under State Farm Mutual and State Farm Fire automobile insurance policies.

2.     FMCC is operating unlawfully as an unlicensed health care clinic and has done so since at least October 2017. FMCC does not qualify for its claimed exemption from licensure—the "wholly owned" exemption—because FMCC's owner, Dr. Fakhoury, failed to supervise the business activities of the clinic and ensure its compliance with all federal and state laws. *See* Fla. Stat. § 400.9905(4)(g). Thus, the claims and charges related to the services performed at FMCC are not compensable under Florida law. *See* Fla. Stat. § 400.9935(3) ("A charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this part but that is not so licensed . . . is an unlawful charge and is noncompensable and unenforceable."); *see also See* Fla. Stat. § 627.736(5)(b)(1)(b) ("An insurer or insured is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered").

3.     Specifically, Dr. Fakhoury failed to address the following fraudulent and unlawful conduct at FMCC:

> a. Dr. Shanawany falsely represented nearly every patient of FMCC suffered from an emergency medical condition ("EMC")—that is, a condition that "manifest[s] itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in . . . [s]erious jeopardy to patient health, . . . [s]erious impairment to bodily functions, [or] . . . [s]erious dysfunction of any bodily organ or part." Fla. Stat. § 627.732(16). It simply is not credible nearly all patients of FMCC—most of whom purportedly suffer from

commonplace, soft tissue injuries, that would rarely, if ever, result in serious jeopardy to patient health, serious impairment of bodily functions, or serious dysfunction of any bodily organ or part–sustained an EMC.

b.  FMCC employs licensed massage therapists ("LMTs"), whom administer a service billed as manual therapy to virtually every patient. FMCC submits claims to State Farm Mutual and State Farm Fire for the services performed by its LMTs in contravention of Florida Statutes § 627.736(1)(a)(5), which excludes massage and services performed by LMTs as compensable medical benefits under the Florida Motor Vehicle No-Fault Law (the "No-Fault Law").

c.  FMCC does not engage in a good faith effort to collect copayments and deductibles from patients in violation of the Insurance Fraud Statute (Florida Statutes § 817.234(7)(a)) as an inducement for patients to commence and continue treatment at FMCC.

4.      FMCC operated unlawfully as a result of Dr. Fakhoury's supervisory and compliance failures since at least as early as October 2017, and the same continues uninterrupted through the present. Defendants made material misrepresentations and other affirmative acts to conceal their misconduct from State Farm Mutual and State Farm Fire. In submitting claims for No-Fault Benefits, Defendants represented to State Farm Mutual and State Farm Fire that FMCC was in compliance with the licensure requirements of the Health Care Clinic Act and its services were lawfully rendered. Each bill and its supporting documentation, when viewed in isolation, did not reveal its unlawful nature. Only when the bills and supporting documentation across the patients at issue in this Complaint were viewed together as a whole along with Dr. Fakhoury's supervision of FMCC did the patterns emerge revealing the unlawful nature of all the bills and supporting documentation. *See*, *e.g.*, **Exhibit 1.**

5.      As a direct and proximate result of Defendants' unlawful and fraudulent conduct, State Farm Mutual and State Farm Fire incurred actual damages of at least $2.5 million in No-Fault Benefits paid to Defendants.

6.      This action asserts a common law claim for unjust enrichment and a statutory claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Florida Statutes §§ 501.201-501.213) to recover actual damages of at least $2.5 million paid to FMCC, plus costs and reasonable attorney's fees for violations of FDUTPA.  This action also seeks a declaratory judgment that State Farm Mutual and State Farm Fire are not liable for any unpaid charges that FMCC submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire to the extent the charges relate to claims in which services were unlawfully rendered or fraudulent.

## II.    JURISDICTION AND VENUE

7.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because the action is between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because: (a) a substantial part of the events giving rise to State Farm Mutual's and State Farm Fire's claims occurred in this judicial district; and (b) one or more Defendants reside in this judicial district and all Defendants reside in Florida.

### III.    THE PARTIES

#### a. Plaintiffs

9.      State Farm Mutual is a citizen of the state of Illinois.  It is incorporated under the laws of Illinois, with its principal place of business in Bloomington, Illinois.  State Farm Mutual is authorized to conduct business in Florida and issues automobile insurance policies in Florida.

10.     State Farm Fire is a citizen of the state of Illinois.  It is incorporated under the laws of Illinois, with its principal place of business in Bloomington, Illinois.  State Farm Fire is authorized to conduct business in Florida and issues automobile insurance policies in Florida.

#### b. Defendants

11.     Dr. Fakhoury is a citizen of Florida and resides in Marion County, Florida. Dr. Fakhoury has been licensed as a chiropractic physician in Florida since 1985.

12.     Dr. Shanawany is a citizen of Florida and resides in Marion County, Florida. Dr. Shanawany has been licensed as a medical doctor in Florida since 1986. Dr. Shanawany is a full-time employee of FMCC and serves as its Medical Director.

13.     FMCC is a Florida professional limited liability company, formed on June 23, 2009, with its principal place of business at 1009 SW 16th Lane, Ocala, FL 34471. Dr. Fakhoury is the only member of FMCC.

## IV.   RELEVANT BACKGROUND

### a. Insurance Benefits Under Florida Law

14.    Under the No-Fault Law, each automobile owner or leasee is required to maintain, and each insurer is required to issue, a minimum amount of personal injury protection insurance coverage payable without regard to who is at fault in causing an accident. *See* Fla. Stat. §§ 627.730-627.7405.

15.    Under this coverage, insurers are required to pay 80% of all reasonable expenses for medically necessary medical, surgical, x-ray, dental, and rehabilitative services related to injuries caused by the accident up to the applicable cap of either $2,500 or $10,000. Fla. Stat. § 627.736(1)(a).

16.    Under the No-Fault Law, "medically necessary" means "a medical service or supply that a prudent physician would provide for the purposes of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is: (a) [i]n accordance with generally accepted standards of medical practice; (b) [c]linically appropriate in terms of type, frequency, extent, site, and duration; and (c) [n]ot primarily for the convenience of the patient, the physician, or other health care provider." Fla. Stat. § 627.732(2)(a)-(c).

17.    In 2012, the No-Fault Law was amended in order to address insurance fraud, which had become an increasing problem in Florida. *See* Fla. Law. Ch. 2012-197. After the amendment to the No-Fault Law became effective on January 1, 2013, PIP benefits are limited to $2,500 unless a medical doctor or other professional licensed under other specific provisions of Florida law determines the

injured person sustained an EMC, in which case the injured person would be eligible for PIP benefits of up to $10,000. Fla. Stat. § 627.736(1)(a)(3)-(4). The amendment also excluded massage and services performed by LMTs from medical benefits that may be reimbursed under the No-Fault Law:

> Medical benefits do not include massage as defined in s. 480.033 . . . regardless of the person, entity, or licensee providing massage therapy. . . and a licensed massage therapist . . . may not be reimbursed for medical benefits under this section.

*See* Fla. Stat. § 627.736(1)(a)(5).

18.    PIP benefits are overdue if not paid within 30 days, and State Farm Mutual and State Farm Fire may be ordered to pay interest and attorney's fees if they fail to pay the amount determined to be owed within that 30-day time period. *See* Fla. Stat. § 627.736(4)(b) and (d).

19.    Neither an insurer nor an insured is required to pay a claim or charge: (i) for services or treatment that were not lawful at the time rendered; (ii) to any person who knowingly submits a false or misleading statement relating to the claim or charges; or (iii) for any bill or statement that does not substantially meet the billing requirements set forth in the No-Fault Law.    Fla. Stat. § 627.736(5)(b)(1)(b)-(d).  In this context, the No-Fault Law's billing requirements provide—among other things—all PIP billing must, to the extent applicable, comply with the instructions promulgated by the Centers for Medicare & Medicaid Services ("CMS") for the completion of CMS-1500 forms, as well as the guidelines promulgated by the American Medical Association ("AMA") in connection with the use of CPT codes. *See* Fla. Stat. § 627.736(5)(d). The CMS guidelines for the

completion of CMS-1500 forms make clear that, in Box 31 of the CMS-1500 form, health care providers must set forth the name of the individual who either personally performed or directly supervised the underlying health care service. *See* Medicare Claims Processing Manual, Chapter 26, Item 31. Accordingly, health care providers who misrepresent, in their PIP billing, the identities of the individuals who personally perform or directly supervise the underlying health care services, or the nature, extent, and medical necessity of the underlying services, are not entitled to receive PIP benefits. *See* Fla. Stat. § 627.736(5)(b) and (d).

20.    MPC is an optional insurance coverage that provides reimbursement benefits that are supplemental to PIP benefits.   MPC covers the 20% PIP copayment for which the insured would otherwise be responsible and also allows an insured to elect additional medical coverage above the PIP benefits minimum policy limits required by Florida law.  Similar to the law governing PIP benefits, pursuant to State Farm Mutual and State Farm Fire's applicable policies, MPC coverage is only available for treatment that is medically necessary and lawfully rendered. *See* State Farm Car Policy 9810A at 44.

21.    FMCC secured assignments of No-Fault Benefits from State Farm Mutual and State Farm Fire insureds. FMCC used these assignments to submit claims and charges directly to State Farm Mutual and State Farm Fire for services and treatments rendered to State Farm Mutual's and State Farm Fire's insureds. *See* Date of Service Summary, attached as **Exhibit 2**.

### b. The Health Care Clinic Act

22.     In 2003, the Florida Legislature enacted the Health Care Clinic Act ("HCCA") (Florida Statutes §§ 400.990-400.995) based on its finding "the regulation of health care clinics must be strengthened to prevent significant cost and harm to consumers." Fla. Stat. § 400.990(2). The express purpose of the Act "is to provide for the licensure, establishment, and enforcement of basic standards for health care clinics and to provide administrative oversight by the Agency for Health Care Administration." *Id.*

23.     The HCCA makes it unlawful for a clinic to operate without a license from AHCA unless it meets one of the specifically enumerated exemptions set forth in the HCCA. Fla. Stat. § 400.991. One such exemption, commonly referred to as the "wholly owned" exemption, applies to a clinic that is wholly owned by one or more licensed health care practitioners. *See* Fla. Stat. § 400.9905(4)(g). However, the "wholly owned" exemption only applies if "one of the owners who is a licensed health care practitioner is supervising the business activities and is legally responsible for the entity's compliance with all federal and state laws." As a result, the "wholly owned" exemption does not apply if a licensed health care practitioner does not supervise the clinic's business activities or remain responsible for legal compliance, even if that health care practitioner purports to wholly own the health care clinic. *See* Fla. Stat. § 400.9905(4)(g).

24.     Pursuant to the HCCA, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this part but that is not

so licensed . . ., regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable and unenforceable."[1] Fla. Stat. § 400.9935(3).

25.    At all times relevant to this action, FMCC tendered charges for reimbursement for health care services to automobile insurance companies like State Farm Mutual and State Farm Fire. With regard to each patient listed in **Exhibits 3 and 4**, FMCC submitted one or more claims for payment of No-Fault Benefits to State Farm Mutual or State Farm Fire. The insurers, to which FMCC regularly submitted bills for reimbursement, constitute third-party payors, which rendered FMCC a health care clinic as defined by the HCCA. *See* Fla. Stat. § 400.9905(4); Fla. Admin. Code R. 59A-33.006(14).

## V.    FMCC'S UNLAWFUL OPERATION AS AN UNLICENSED HEALTH CARE CLINIC

### a.  Dr. Shanawany's Fraudulent EMC Determinations

26.    As noted above, before January 1, 2013, injured parties who were eligible for PIP benefits were entitled to up to $10,000 of PIP benefits for medically necessary goods and services. Then, in 2012, the Florida Legislature amended the No-Fault Law in an attempt "to reduce fraud in order to lower the cost of insurance premiums." *Progressive Am. Ins. Co. v. Eduardo J. Garrido D.C. P.A.*, 211 So. 3d 1086, 1089 (Fla. 3 DCA 2017), *review denied sub nom. Eduardo J. Garrido D.C.*

---

[1] Because a violation of the HCCA renders a clinic's claims unlawful, the claims would also be non-compensable under the No-Fault Law. *See* Fla. Stat. § 627.736(5)(b)(1)(b) ("An insurer or insured is not required to pay a claim or charges . . . [f]or any service or treatment that was not lawful at the time rendered").

*P.A. v. Progressive Am. Ins. Co.*, No. SC17-383, 2017 WL 2874837 (Fla. July 6, 2017). The amendment, which became effective on January 1, 2013, sought to further its objective by limiting PIP benefits to $2,500 unless there was a determination by a medical doctor or other professional licensed under other specific provisions of Florida law that the injured person sustained an EMC, in which case the injured person was eligible for PIP benefits of up to $10,000 for such goods and services. *See* Fla. Stat. § 627.736(1)(a)(3)-(4).

27.   The legislative intent behind the EMC requirement was "to decrease PIP fraud in Florida by placing more stringent requirements on the insured in order to receive the full amount of benefits and to efficiently allocate maximum benefits to the insured who have severe medical conditions." *Enivert v. Progressive Select Ins. Co.*, 62 F. Supp. 3d 1352, 1355 (S.D. Fla. 2014), *aff'd sub nom. Robbins v. Garrison Prop. & Cas. Ins. Co.*, 809 F.3d 583 (11th Cir. 2015).

28.   Because chiropractors such as Dr. Fakhoury are not allowed, under the No-Fault Law, to diagnose patients with an emergency medical condition, Defendants could be limited to $2,500 in PIP benefits in the absence of an examinations by a medical doctor. Thus, Defendants' schedule an initial examination with Dr. Shanawany at the outset of treatment to ensure the full $10,000 in PIP benefits is available for Defendants, regardless of the severity of the patients' medical conditions.

29.   Since at least October 2017, Dr. Shanawany has falsely represented nearly all patients he examined at FMCC suffered from an EMC—that is:

[A] medical condition manifesting itself by acute symptoms of sufficient severity, which may include severe pain, such that the absence of immediate medical attention could reasonably be expected to result in any of the following:

(a) Serious jeopardy to patient health.

(b) Serious impairment to bodily functions.

(c) Serious dysfunction of any bodily organ or part.

*See* Fla. Stat. § 627.732(16); *see also* **Exhibit 1**, EMC Declared Column.

30.    Dr. Shanawany's fraudulent EMC determinations are documented in his initial examination reports and "Notice of Emergency Medical Condition" forms, which Defendants submit to State Farm Mutual and State Farm Fire. *See* **Exhibit 5**, Representative Examples of Physician Initial Exam Reports and Bills; **Exhibit 6**, Representative Examples of EMC Notices.

31.    Defendants' records fail, however, to meaningfully detail any emergency medical conditions in their patients, most of whom purportedly suffer from commonplace, soft tissue injuries such as cervicalgia (neck pain), thoracalgia (pain in the thoracic spine), and lumbago (low back pain) (*see*, *e.g.*, **Exhibit 1**), that would rarely, if ever, result in serious jeopardy to patient health, serious impairment of bodily functions, or serious dysfunction of any bodily organ or part. For example:

   a. Dr. Shanawany determined patient C.N. (Claim No. 592284G47) had an EMC on December 8, 2017 despite finding the patient was in "no acute distress" and only diagnosing the patient with headaches and non-specific neck and back pain: thoracalgia and lumbago.

     b. Dr. Shanawany determined patient M.D. (Claim No. 595815Z14) had an EMC on October 4, 2018 despite finding the patient was in "no acute distress" and only diagnosing the patient with non-specific neck and back pain: cervicalgia and lumbago.

     c. Dr. Shanawany determined patient C.R. (Claim No. 59B0648F8) had an EMC on August 27, 2019 despite finding the patient was in "no acute distress" and only diagnosing the patient with non-specific pain: thoracalgia and shoulder pain.

     d. Dr. Shanawany determined patient S.C. (Claim No. 5923H577S) had an EMC on August 16, 2021 despite finding the patient was in "no acute distress" and only diagnosing the patient with headaches and non-specific pain: cervicalgia, thoracalgia, and knee pain.

     e. Dr. Shanawany determined patient W.V. (Claim No. 5936V916G) had an EMC on June 8, 2022 despite finding the patient was in "no acute distress" and only diagnosing the patient with non-specific pain: cervicalgia, lumbago, and shoulder and hip pain.

32.    In brief, it simply is not credible nearly all patients of FMCC sustained an EMC.

33.    By virtue of the fraudulent EMC findings contained in Defendants' documentation, Defendants knowingly submitted to State Farm Mutual and State Farm Fire a false statement relating to a claim or charge. *See State Farm Mut. Auto. Ins. Co. v. Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d 1291, 1303 (S.D. Fla. 2018) ("Section 817.234 imposes a duty of disclosure as it explicitly prohibits preparing or making any written statement that is intended to be presented to any insurer in connection with any claim for payment or other benefit pursuant to an insurance policy, knowing that such statement contains any false, incomplete, or misleading information concerning any fact material to that claim."). Accordingly, neither State Farm Mutual and State Farm Fire nor their

insureds were required to pay any claim or charges for any goods or services from FMCC that contained a fraudulent EMC determination. *See* Fla. Stat. § 627.736(5)(b)(1)(c); *see also* **Exhibit 1**, EMC Declared Column.

### b. The Services Performed by LMTs Do Not Qualify for Reimbursement Under the No-Fault Law

34.     Another aspect of the 2012 amended to the No-Fault Law was the exclusion of massage and services performed by LMTs as compensable medical benefits:

> Medical benefits do not include massage as defined in s. 480.033 . . . regardless of the person, entity, or licensee providing massage therapy. . . and a licensed massage therapist . . . may not be reimbursed for medical benefits under this section.

*See* Fla. Stat. § 627.736(1)(a)(5).

35.     However, after the 2012 amendment to the No-Fault Law became effective, FMCC continued to employ or engage LMTs. The LMTs perform a service billed as manual therapy (CPT 97140):

> Q.     Do you know what the training of any of the individuals are, are they physically therapists providing those services?
> A.     The manual therapy is performed by licensed massage therapists that are trained.

*See* **Exhibit 7** (July 24, 2019 Dr. Fakhoury Dep. Tr. 75:3-7).

36.     The service billed as manual therapy is a standard component of FMCC's treatment protocol. Indeed, this service was purportedly administered to virtually every patient of FMCC and performed on the vast majority of visits. *See* **Exhibit 8**.

37.     FMCC is prohibited from submitting claims for the reimbursement of No-Fault Benefits for the service billed as manual therapy because it is administered by LMTs. *See* Fla. Stat. § 627.736(1)(a)(5); State Farm Car Policy 9810A at 4; *see also S. Owners Ins. Co. v. Hendrickson*, No. 5D19-2799, 2020 WL 2502109, at *1 (Fla. 5th DCA May 15, 2020) (recognizing "[t]he plain text of section 627.736(1)(a)5. precludes a licensed massage therapist from being reimbursed for medical benefits.").

38.     FMCC is also prohibited from submitting claims for the reimbursement of No-Fault Benefits for the service billed as manual therapy because the service actually constitutes non-compensable massage. *See* Fla. Stat. § 627.736(1)(a)(5). The service is performed by LMTs, whose scope of practice is limited to massage. *See State Farm Mut. Auto. Ins. Co. v. Health & Wellness Servs., Inc.*, 446 F. Supp. 3d 1032, 1048-49 (S.D. Fla. 2020), *reconsideration denied*, No. 18-23125-CIV, 2020 WL 4586399 (S.D. Fla. Aug. 10, 2020) ("[A] licensed massage therapist's scope of practice does not permit him or her to perform anything but 'massage,' which is defined as 'the manipulation of the soft tissues of the human body with the hand, foot, arm, or elbow, whether or not such manipulation is aided by hydrotherapy … or thermal therapy; any electrical or mechanical device; or the application to the human body of a chemical or herbal preparation.'").

39.     In addition, Dr. Shanawany acknowledged "massage therapy" is administered after his examinations:

Q.   Do you -- well, give me an example of what you're responsible for?

A.   I just make sure that the patients when they are checked in are seen by the staff, taken the history, vitals and stuff like this. And when I see them, I do x-rays, and they do good x-rays or bad x-rays. **And then they go to massage therapy or exercises.** And then they go to the chiropractors. And then the chiropractors, I don't get involved in their treatment.

*See* **Exhibit 9** (Jan. 15, 2020 Dr. Shanawany Dep. Tr. 11:6-14) (emphasis added).

40.   Patients have also testified they received massage at FMCC. For example:

a.   Patient H.F. (Claim No. 596086N34) testified:

Q.   Okay. Okay. And then the massages, you did that at every visit?

A.   Yeah.

Q.   Okay.· Describe to me that procedure or therapy.

A.   **I lay facedown on the massage chair and then they just massage whatever area I'm feeling pain mostly in that day.**

Q.   **And when they -- when you say "they massage", they use their hands?**

A.   **Yeah.**

Q.   And who would typically perform the massage?

A.   I don't know.· It's – it's just whoever's next available.

Q.   One of the massagers?

A.   Yeah.

Q.   Okay.· That wouldn't be the same as the physical therapist or the chiropractor, right?

A.   No.

**Exhibit 10** (Jan. 22, 2019 H.F. EUO Tr. 83:6-25) (emphasis added).

b.   Patient E.M. (Claim No. 596103S89) testified:

Q.   Did anyone at Dr. Fakhoury's office, on your first visit on October 8th, discuss with you what kind of treatment you would be receiving?

A.      Yes.· They said I would be doing **massage**, x-ray, exercise.· They told me to come back the next day to see if the pain is not going to go up.

**Exhibit 11** (Jan. 28, 2019 E.M. EUO Tr. 27:3-8) (emphasis added).

      c.   Patient T.C. (Claim No. 597407B53) testified:

Q.      Okay.· Okay.· Now, let's talk a little bit about the massage you mentioned.
A.      Okay.
Q.      How is the massage performed?· Is that done manually or is that done with a machine?
A.      Oh, manually.
Q.      And can you describe it for me?
A.      Yeah.· They just have me lay down on the table.· They, really not much, they just pull my shirt up and then, you know, my pants down just a little. And then they just use some kind of gel, or something, or lotion or whatever they use, and then they just rub the back. Sometimes, depending on the person who's doing it, kind of depends on the effectiveness of it.

**Exhibit 12** (April 26, 2019 T.C. EUO Tr. 48:13-49:1).

      d.   Patient C.G. (Claim No. 598162M68) testified:

Q.      Okay. You mentioned a massage?
A.      Yes.
Q.      Did you have a separate person giving the massage?
A.      Yes.
Q.      Who was that?
A.      They changed. I don't really know who my initial massage therapist was?
Q.      But you know it was a massage therapist?
A.      Yes.
Q.      **Did they say it was massage?**
A.      **Yes.**

**Exhibit 13** (May 8, 2019 C.G. EUO Tr. 32:25-33:11) (emphasis added).

      e.   Patient S.L. (Claim No. 598392L44) testified:

Q.      Did they ever have you lay on a bed and it felt, like, hard rollers going on to your back?

> A.     No. **But I would get a massage.**
> Q.     Was the massage done by hand?
> A.     Yes, it was.
> Q.     **I'm assuming by a physical therapist or by a chiropractor?**
> A.     **No. By a licensed massage therapist.**

**Exhibit 14** (May 27, 2020 S.L. EUO Tr. 95:16-23) (emphasis added).

41.     Defendants knowingly submitted to State Farm Mutual and State Farm Fire a false statement relating to a claim or charge each time they presented, or caused to be presented, to State Farm Mutual and State Farm Fire bills for manual therapy. *See Performance Orthapaedics & Neurosurgery, LLC*, 315 F. Supp. 3d at 1303. In each instance Defendants represented: 1) the practitioner who performed the service billed as manual therapy was properly licensed; 2) the services were lawfully rendered and compensable; and 3) the services billed constituted manual therapy. In reality, the service was performed by a LMT— which FMCC and Dr. Fakhoury failed to disclose to State Farm Mutual and State Farm Fire—who was precluded from the reimbursement of medical benefits under the No-Fault Law nor was qualified or licensed to perform manual therapy. *See* Fla. Stat. § 627.736(1)(a)(5); Fla. Stat. § 480.033(3). Accordingly, neither State Farm Mutual and State Farm Fire nor their insureds were required to pay any claims or charges for any goods or services from FMCC that contained services performed by a LMT. *See* Fla. Stat. § 627.736(5)(b)(1); *see also* **Exhibit 8**.

### c. Defendants Do Not Make a Good Faith Attempt to Collect Deductibles and Copayments

42.    FMCC also circumvented its obligation under Florida law to collect copayments and deductibles from patients to induce patients to commence and continue treatment.

43.    The No-Fault Law requires automobile insurers, such as State Farm Mutual and State Farm Fire, to pay 80% of all reasonable charges. *See* Fla. Stat. § 627.736(1)(a). The remaining 20% copayment is the obligation of the insured. As Judge Scola has recently recognized:

> When copayments and deductibles are not collected, healthcare providers have less incentive not to administer excessive and unnecessary care. Correspondingly, "if insureds are required to pay a deductible every time they visit a medical clinic, they will be less likely to make unnecessary visits to the medical clinic."

*Health & Wellness Servs., Inc.*, 446 F. Supp. 3d at 1051 (quoting *United Auto. Ins. Co. v. Florida Wellness & Rehab. Ctr.*, 08-20348-CIV, 2009 WL 10667729, at *2 (S.D. Fla. Feb. 11, 2009)).

44.    However, in reality, to incentivize patients to appear for unnecessary treatment, some PIP clinics waive (or never intend to collect) copayments or deductibles from the patients and agree (or intend) to collect only the fees received from insurers as payment in full.

45.    The Insurance Fraud Statute expressly makes the "general business practice" of waiving or failing to collect copayments or deductibles "insurance fraud." Fla. Stat. § 817.234(7)(a). In determining whether a clinic has engaged in such general business practice, the Insurance Fraud Statute provides

"consideration shall be given to evidence of whether the physician or other provider made a good faith attempt to collect such deductible or copayment." *Id.*

46.     In addition to the express prohibition of the Insurance Fraud Statute, the general practice of waiving copayments or deductibles also creates a misrepresentation regarding the clinic's "usual and customary charge" in contravention of the No-Fault Law. *See* Fla. Stat. § 627.736(5)(a) (providing a clinic cannot charge an insurer an amount that "exceed[s] the amount the person or institution customarily charges for like services or supplies.").

47.     FMCC violated the Insurance Fraud Statute by engaging in a "general business practice" of waiving or failing to collect copayments or deductibles. This failure to make a good faith attempt to collect copayments and deductibles is evident from the fact patients did not personally make any payments for their treatment nor were patients asked to do so. For example:

    a.  Patient E.M. (Claim No. 596103S89) testified:

Q.     Okay.· Have you paid any money out of your own pocket to Dr. Fakhoury's office for any of your treatment for this accident?
A.     No.
Q.     Has anyone from Dr. Fakhoury's office discussed with you whether you would owe a 20 percent copay?
A.     No.
Q.     Have you received any bills from Dr. Fakhoury's office for treatment from the 2018 accident?
A.     No.

**Exhibit 11** (Jan. 28, 2019 E.M. EUO Tr. 40:25-41:11).

    b.  Patient J.C. (Claim No. 597039Z30) testified:

Q.    [H]ave you paid -- other than the 24 cents for the cyclobenzaprine, have you paid any money out of your pocket for any treatment whether it be to the MRI facility, to the doctor in Gainesville, to the pain ·management doctor or to Dr. Fakhoury's office?

A.    No.

Q.    Okay.· Have you gotten any bills from any of those doctor's office?

A.    No.

...

Q.    Okay.· Did anyone at Dr. Fakhoury's office discuss with you how much the therapy would cost?

A.    No.

Q.    Did anyone at Dr. Fakhoury's office discuss any payment arrangements with you?

A.    No.

**Exhibit 15** (Mar. 6, 2019 J.C. EUO Tr. 51:21-52:5; 56:12-17).

     c.  Patient A.M. (Claim No. 598023W51) testified:

Q.    Okay.· Have you paid any money out of your pocket for any of the treatment at Dr. Fakhoury's office?

A.    No.

**Exhibit 16** (May 21, 2019 A.M. EUO Tr. 37:8-11).

     d.  Patient A.B. (Claim No. 599049L54) testified:

Q.    Now, have you had to pay anything out of pocket at Fakhoury?

A.    No.

...

Q.    What do you think your total – the total cost is for your treatment right now?

A.    I have no idea. I don't know what they're charging.

Q.    Did they explain to you how -- how your bills would be paid?

A.    Well, they had said they would bill the insurance company, you have X amount of – of treatments that would probably, I guess, be available. So they were trying to do the most efficient way of getting it done.

**Exhibit 17** (July 15, 2019 A.B. EUO Tr. 47:20-22; 50:14-24).

     e.   Patient J.L. (Claim No. 599791K53) testified:

Q.    [H]ave you received any bills from Dr. Fakhoury's office?
A.    No.
Q.    Have you made any payment out of your pocket for treatment by Dr. Fakhoury?
A.    No.

**Exhibit 18** (Sept. 27, 2019 J.L. EUO Tr. 42:11-16).

## VI.   DEFENDANTS CONCEALED THEIR UNLAWFUL AND FRAUDULENT CONDUCT

48.    Defendants are obligated legally and ethically to act honestly and with integrity. Florida practice statutes govern the conduct of physicians and chiropractors who provide services in the state of Florida. *See, e.g.*, Fla. Stat. §§ 456.072, 458.331, and 460.413 (collectively, the "Disciplinary Statutes"). Pursuant to the Disciplinary Statutes, the following acts can result in disciplinary action against a physician and chiropractor:

    a.  Making misleading, deceptive, or fraudulent representations in or related to the practice of the licensee's profession;

    b.  Making deceptive, untrue, or fraudulent representations in or related to the practice of a profession; and

    c.  Exercising influence on the patient or client for the purpose of financial gain of the licensee or a third party.

Fla. Stat. §§ 456.072(1)(a), (m), and (n), 458.331(1)(k) and (n), and 460.413(1)(k) and (n).

49.    Moreover, the Insurance Fraud Statute imposes criminal penalties on providers who "with the intent to injure, defraud or deceive any insurer . . . [p]repares or makes any written or oral statement that is intended to be presented to any insurer in connection with, or in support of, any claim for payment or other

benefit pursuant to an insurance policy . . . knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim." Fla. Stat. § 817.234(1)(a)(2).

50.    In addition, Defendants submitted each and every one of the clinics' medical bills on a CMS-1500 form. The healthcare practitioners at FMCC, including Dr. Fakhoury and Dr. Shanawany, signed Box 31 of the form certifying the statements on the back of the form applied to each and every bill the provider submitted to State Farm Mutual and State Farm Fire. *See* Date of Service Summary, attached as **Exhibit 2**. Specifically, the backside of the form states "[a]ny person who knowingly files a statement of claim containing any misrepresentation of any false, incomplete or misleading information may be guilty of a criminal act punishable under law and may be subject to civil penalties." Thus, by signing the CMS-1500 forms that were submitted to State Farm Mutual and State Farm Fire, Defendants certified their claims were honest, truthful, complete, and lawful.

51.    Despite their duty to act honestly, with integrity, and in accordance with Florida law, Defendants submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire bills and supporting documentation that were false, misleading, incomplete, deceptive, and fraudulent because they represented FMCC was properly licensed and its services were lawfully rendered when, in fact, they were not because Dr. Fakhoury failed to supervise the business activities of the clinic and ensure its compliance with all federal and state laws. Defendants

23

submitted the bills and supporting documentation to State Farm Mutual and State Farm Fire to induce them to pay benefits to which Defendants knew they were not entitled.

52.     As a result of Defendants' false statements in the bills and supporting medical records they submitted to State Farm Mutual and State Farm Fire, State Farm Mutual and State Farm Fire paid for unlawful and non-compensable services.

53.     State Farm Mutual and State Farm Fire are under statutory and contractual duties to pay claims for No-Fault Benefits within 30 days, and may be ordered to pay interest and attorney's fees if they fail to pay the full amount owed within that time period. *See* Fla. Stat. §§ 627.736(4)(b) and (d). Defendants' fraudulent scheme was successful because of precisely how State Farm Mutual and State Farm Fire were required to adjust claims for No-Fault Benefits.

54.     Defendants developed and implemented their unlawful and fraudulent scheme to take advantage of State Farm Mutual and State Farm Fire and the Florida No-Fault claims environment. Defendants knew the efficient operation of a system of insurance requires prompt processing of individual claims. Thus, Defendants designed a scheme that could go undetected in an individual claim. Specifically, Defendants fraudulently concealed their conduct by repeatedly submitting misleading bills and supporting documentation that made it appear they were delivering lawful care when considered in the context of a single patient's claim, when they were not.

24

55.     Each bill and its supporting documentation, when viewed in isolation, did not reveal its fraudulent and unlawful nature. Only when Dr. Fakhoury's supervision and Defendants' bills and supporting documentation across the patients at issue in this Complaint were viewed together as a whole did the patterns emerge revealing the fraudulent and unlawful nature of all the bills and supporting documentation. State Farm Mutual and State Farm Fire did not discover and could not have reasonably discovered their payments to Defendants were based upon fraudulent and unlawful conduct until they analyzed Defendants' compliance with the HCCA and reviewed together as a whole the patterns reflected in the bills and supporting documentation for all of the patients at issue in this Complaint. *See*, *e.g*., **Exhibits 1**. Only then did it become apparent Defendants were not providing lawful medical care. The submission of fraudulent bills and supporting documentation were affirmative acts by Defendants that prevented State Farm Mutual and State Farm Fire from discovering the truth.

56.     The bills and supporting documents that Defendants submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire in support of the unlawful charges at issue, combined with the material misrepresentations described above, were designed to and did cause State Farm Mutual and State Farm Fire to rely on them to their detriment. As a result, State Farm Mutual and State Farm Fire have incurred damages of more than $2.5 million.

## VII.    CLAIMS FOR RELIEF

### First Cause of Action
(Against All Defendants for Unjust Enrichment)

57.    State Farm Mutual and State Farm Fire incorporate as though fully set forth herein the allegations in Paragraphs 1 through 56 above.

58.    In each claim described in **Exhibit 3**, State Farm Mutual and State Farm Fire conferred a benefit upon Defendants by paying their claims, and the Defendants voluntarily accepted and retained the benefit of those payments. Dr. Fakhoury received a benefit for his participation in the scheme through his sole ownership and exclusive control of FMCC and through payments made to him by FMCC. Dr. Shanawany received a benefit for his participation in the scheme through his role as a clinician and Medical Director through payments made to him by FMCC.

59.    State Farm Mutual's and State Farm Fire's payments constitute a benefit of which Defendants were aware.

60.    When State Farm Mutual and State Farm Fire paid No-Fault Benefits based upon facially valid claims and charges that Defendants submitted, or caused to be submitted, State Farm Mutual and State Farm Fire reasonably believed they were legally obligated to make such payments.

61.    Because Defendants knowingly submitted, or caused to be submitted, to State Farm Mutual and State Farm Fire charges for services that were not lawful

when they were rendered, the circumstances are such that it would be inequitable to allow them to retain the benefit of the monies paid.

62.     As a direct and proximate result of the above-described conduct, State Farm Mutual and State Farm Fire have been damaged and Defendants have been unjustly enriched by more than $2.5 million.

WHEREFORE, State Farm Mutual and State Farm Fire respectfully request this Court enter judgment in their favor and award compensatory damages in an amount to be proven at trial, interest thereon, and costs against Defendants, jointly and severally, and grant such other relief as the Court deems just and appropriate.

### Second Cause of Action
(Against All Defendants for Violations of FDUTPA)

63.     State Farm Mutual and State Farm Fire incorporate as though fully set forth herein the allegations in Paragraphs 1 through 56 above.

64.     In each claim described in **Exhibit 3**, Defendants engaged in unfair and deceptive acts and practices in the conduct of trade and commerce, in violation of FDUTPA. *See* Fla. Stat. §§ 501.201-501.213.

65.     These acts and practices include FMCC's unlawful operation as an unlicensed health care clinic in contravention of the HCCA, which was the result of Dr. Fakhoury's failure to supervise the business activities of FMCC and ensure its compliance with all federal and state laws. *See* Fla. Stat. § 400.9905(4)(g). FMCC's failure to maintain a health care clinic license rendered its charges non-compensable and unenforceable under the HCCA and the No-Fault Law.

27

66.    These acts and practices also included intentionally and knowingly making, and causing to be made, false and fraudulent statements of material fact to State Farm Mutual and State Farm Fire, injuring State Farm Mutual and State Farm Fire insureds, the State of Florida, and the public as a whole.

67.    Specifically, Defendants deceived and defrauded State Farm Mutual and State Farm Fire by (a) holding themselves out to State Farm Mutual and State Farm Fire as a clinic that was lawfully providing services while knowing of the falsity of their purported licensure exemption; and (b) failing to disclose to State Farm Mutual and State Farm Fire that Dr. Fakhoury failed to supervise the business activities of FMCC and ensure its compliance with all federal and state laws.

68.    Defendants' practice of presenting (or causing to be presented) claims for payment to State Farm Mutual and State Farm Fire for services that were unlawful and non-compensable as a result of FMCC's unlawful operation as an unlicensed health care clinic also violated the Insurance Fraud Statute. *See* Fla. Stat. § 817.234.

69.    Specifically, Defendants violated the Insurance Fraud Statute (Florida Statutes § 817.234(1)(a)(1)-(2)) by presenting, or causing to be presented, claims for payment to State Farm Mutual and State Farm Fire that omitted FMCC was an unlicensed health care clinic and misrepresented the billed for services were lawful and compensable when in fact they were not.

70.    Florida Statutes § 626.9541 defines knowingly causing to be presented to any insurer "a false claim for payment" as an unfair method of competition and unfair or deceptive act or practice. Fla. Stat. § 626.9541(1)(u).

71.    Defendants knowingly presented (or caused to be presented) a false claim for payment each time they presented or caused to be presented charges for services that were not lawful when they were rendered.

72.    Dr. Fakhoury, Dr. Shanawany, and other health care practitioners who work for FMCC signed the false, incomplete, and/or misleading claims for payment that were submitted to State Farm Mutual and State Farm Fire. *See* Date of Service Summary, attached as **Exhibit 2**.

73.    These violations of the HCCA, the Insurance Fraud Statute, and Florida Statutes § 626.9541 are per se FDUTPA violations.

74.    Accordingly, this conduct is per se unfair or deceptive under FDUTPA. *See* Fla. Stat. § 501.204(1).

75.    In addition, Defendants' above-described conduct was deceptive in that it was likely to mislead a consumer acting reasonably under the circumstances to the consumer's detriment by representing the charges were lawful when they were rendered.

76.    Further, Defendants' above-described conduct was unfair.   The conduct was contrary to Florida public policy and was unconscionable, immoral, unethical, oppressive, and unscrupulous.   This conduct produced no benefits to consumers or competition.

77.     Defendants are jointly and severally liable for the false and unlawful claims submitted to State Farm Mutual and State Farm Fire because each Defendant played an intentional and essential role in furthering FMCC's unlawful conduct. Indeed, the reason FMCC does not qualify for its claimed exemption form licensure—the "wholly owned" exemption—is because FMCC's owner, Dr. Fakhoury, failed to supervise the business activities of the clinic and ensure its compliance with all federal and state laws. *See* Fla. Stat. § 400.9905(4)(g). Moreover, Dr. Shanawany directly participated in the scheme by falsely representing nearly every patient of FMCC suffered from an EMC.

78.     As a result of Defendants' deceptive and unfair practices State Farm Mutual and State Farm Fire were aggrieved and suffered actual damages in excess of $2.5 million.

79.     State Farm Mutual and State Farm Fire seek an award of attorney's fees pursuant to Florida Statutes § 501.2105(1).

WHEREFORE, State Farm Mutual and State Farm Fire respectfully request this Court enter judgment in their favor and award compensatory damages in an amount to be proven at trial, interest thereon, attorney's fees, and costs against Defendants, jointly and severally, and grant such other relief as the Court deems just and appropriate.

## Third Cause of Action
(Against All Defendants for Violations of FDUTPA)

80.     State Farm Mutual and State Farm Fire incorporate, adopt, and re-allege as though fully set forth herein, each and every allegation in paragraphs 1 through 56 above.

81.     In each claim described in **Exhibit 3**, Defendants engaged in unfair and deceptive acts and practices in the conduct of trade and commerce, in violation of FDUTPA. *See* Fla. Stat. §§ 501.201-501.213.

82.     Defendants' unfair and deceptive practices include multiple violations of the Insurance Fraud Statute (Florida Statutes § 817.234).

83.     Specifically, Defendants violated the Insurance Fraud Statute (Florida Statutes § 817.234(1)(a)(1)-(2)) by presenting, or causing to be presented, false EMC determinations to State Farm Mutual and State Farm Fire for patients who did not qualify for the same under Florida Statutes § 627.732(16) as part of, or in support of, claims for payment of No-Fault Benefits.

84.     Defendants also violated the Insurance Fraud Statute (Florida Statutes § 817.234(1)(a)(1)-(2)) by presenting, or causing to be presented, claims for manual therapy to State Farm Mutual and State Farm Fire. In each instance, Defendants falsely represented the practitioner who performed the service billed as manual therapy was properly licensed and the services were lawfully rendered and compensable and omitted the fact the service was performed by a LMT who was precluded from the reimbursement of medical benefits under the No-Fault

Law and was not qualified to perform manual therapy. *See* Fla. Stat. § 627.736(5)(d) ("[n]o statement of medical services may include charges for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services."); *see also* Fla. Stat. § 627.736(1)(a)(5).

85.    Defendants also violated the Insurance Fraud Statute by engaging in a general business practice of waiving (or failing to make a good faith effort to collect) copayments and deductibles.

86.    The Florida Insurance Fraud Statute provides in relevant part:

> It shall constitute a material omission and insurance fraud, punishable as provided in subsection (11), for any service provider, other than a hospital, to engage in a general business practice of billing amounts as its usual and customary charge, if such provider has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge[.]

Fla. Stat. § 817.234(7)(a).

87.    Defendants violated the Insurance Fraud Statute (Florida Statutes § 817.234(7)(a)) because they failed to make a good faith attempt to collect copayments and deductibles from State Farm Mutual and State Farm Fire insureds.

88.    These violations of the Insurance Fraud Statute are *per se* FDUTPA violations.

89.    In addition, Defendants' above-described conduct was deceptive in that it was likely to mislead a consumer acting reasonably under the circumstances

to the consumer's detriment by representing the charges were lawful when they were rendered.

90.    Further, Defendants' above-described conduct was unfair.   The conduct was contrary to Florida public policy and was unconscionable, immoral, unethical, oppressive, and unscrupulous.   This conduct produced no benefits to consumers or competition.

91.    Defendants are jointly and severally liable for the false and unlawful claims submitted to State Farm Mutual and State Farm Fire because they each played an intentional and essential role in furthering the unlawful scheme. Indeed, Dr. Fakhoury, failed to supervise the business activities of FMCC and ensure its compliance with all federal and state laws. Moreover, Dr. Shanawany directly participated in the scheme by falsely representing nearly every patient of FMCC suffered from an EMC.

92.    As a result of Defendants' deceptive and unfair practices, State Farm Mutual and State Farm Fire were aggrieved and suffered actual damages in excess of $2.5 Million.

93.    State Farm Mutual and State Farm Fire seek an award of attorney's fees pursuant to Florida Statutes § 501.2105(1).

WHEREFORE, State Farm Mutual and State Farm Fire respectfully request this Court enter judgment in their favor and award compensatory damages in an amount to be proven at trial, interest thereon, attorney's fees, and costs against

Defendants, jointly and severally, and grant such other relief as the Court deems just and appropriate.

## Fourth Cause of Action
(Against FMCC Under the Federal Declaratory Judgment Act)

94.     State Farm Mutual and State Farm Fire incorporate, adopt, and re-allege as though fully set forth herein, each and every allegation in paragraphs 1 through 56 above.

95.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201.

96.     There is an actual case and controversy between State Farm Mutual and State Farm Fire and FMCC, as to all claims and charges submitted, or caused to be submitted, by FMCC to State Farm Mutual and State Farm Fire for No-Fault Benefits that have not been paid or were allegedly underpaid, including, but not limited to, the claims set forth in **Exhibits 3 and 4**. To the extent any such claims and charges that are pending as of the date of this Complaint, or which are submitted to State Farm Mutual and State Farm Fire during the pendency of this litigation, are for services and treatments that were not lawful at the time rendered as a result of FMCC's operation as an unlicensed health care clinic and violations of Florida Statutes § 817.234(7)(a), are for medical services of a person or entity that performed such services without possessing the valid licenses required to perform such services, or for which FMCC knowingly submitted a false or misleading statement relating to the claim or charges, State Farm Mutual and State

Farm Fire contend no such claims and charges are owed pursuant to Florida Statutes §§ 400.9935(3) and 627.736(5)(b)(1)(b)-(d).

97.    There is a bona fide, present, and practical need for a declaration as to all such claims and charges.

WHEREFORE, State Farm Mutual and State Farm Fire respectfully request a judgment declaring FMCC is not entitled to reimbursement for any of the unpaid or allegedly underpaid charges for services purportedly performed at FMCC and submitted to State Farm Mutual and State Farm Fire to date and through the trial of this case, including but limited to the claims set forth in **Exhibits 3 and 4**, and for supplementary relief, interest, and costs as this Court deems equitable, just, and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), State Farm Mutual and State Farm Fire demand a trial by jury of all issues so triable.

Dated: March 6, 2023       By: */s/ David I. Spector.*

David I. Spector, **Trial Counsel**
Florida Bar Identification No. 086540
James J. Duffy, Esq.
Florida Bar Identification No. 68662
**HOLLAND & KNIGHT LLP**
777 South Flagler Drive, Suite 1900 West
West Palm Beach, FL 33401
Telephone:  (561) 833-2000
Facsimile:  (561) 650-8399
E-mail: david.spector@hklaw.com
        james.duffy@hklaw.com

*Attorneys for State Farm Mutual and State Farm Fire*