## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### TAMPA DIVISION

STATE FARM MUTUAL AUTOMOBILE
INSURANCE CO. and STATE FARM FIRE
& CASUALTY CO.,

     Plaintiffs,

v.

FAKHOURY MEDICAL & CHIROPRACTIC
CENTER, P.L.L.C.; RIADH A. FAKHOURY,
D.C.; and NAGY SHANAWANY, M.D.,

     Defendants.

Case No. 5:23-cv-00153

---

### DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Fakhoury Medical & Chiropractic Center, P.L.L.C. ("FMCC"); Riadh A. Fakhoury, D.C.; and Nagy Shanawany, M.D. (collectively, "Defendants"), through undersigned counsel and pursuant to the Federal Rules of Civil Procedure, hereby move to dismiss the Complaint (D.E. 1) filed by State Farm Mutual Automobile Insurance Co. and State Farm Fire & Casualty Co. (collectively, "State Farm" or "Plaintiffs"). In support, Defendants state as follows:

### I.    Introduction

The Florida legislature, over the course of five decades, has carefully crafted and refined the No-Fault Law (sections 627.730–627.7405, Florida Statutes), which requires all Florida drivers to purchase Personal Injury Protection ("PIP"), and to seek reimbursement from their own auto insurer for injuries sustained in motor vehicle accidents, without regard to fault. The No-Fault Law was designed

to curtail litigation stemming from motor vehicle accidents, ensure Florida drivers have timely access to medical care, and promote efficiency by setting forth clear procedures and deadlines for drivers, auto insurers, and health care providers. By way of example, if an auto insurer has a reasonable belief that a health care provider submitted a claim for reimbursement of PIP benefits that is fraudulent, the insurer *must* notify that provider within 30 days, and then complete an investigation of the suspected fraud within 60 days.  *See* § 627.736(4)(i), Fla. Stat. Conversely, if the insurer suspects that a provider's reimbursement claim, although not fraudulent, is non-reimbursable because the provider rendered medically unnecessary health care services, the No-Fault Law permits the insurer to challenge the claim even after paying it. *See id.* § (4)(b)(6).

In this lawsuit, State Farm seeks to circumvent the carefully constructed procedures and deadlines contemplated by Florida's No-Fault Law. State Farm alleges that *all 543 claims* FMCC submitted from 2017 through 2023 are "false" and "fraudulent" *for multiple different reasons*, and State Farm seeks to recoup $2.5 million in payments it previously paid to FMCC. Thus, through this lawsuit, FMCC must defend claims it submitted to State Farm as long as six years ago—long after State Farm adjusted and paid those claims and, in some instances, years after State Farm litigated disputes over PIP benefits against its own insureds in state courts. And, remarkably, State Farm requests this Court to enter a declaratory judgment to establish that State Farm is not required to pay any claims FMCC submitted after State Farm filed the Complaint or *any future claims* that FMCC

may submit to State Farm before this case is resolved.

The Court should dismiss State Farm's Complaint in its entirety. *First*, State Farm's Complaint alleges violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA"), which is not applicable because Defendants and Defendants' alleged activities are regulated by laws administered by the Florida Department of Financial Services and, thus, not subject to FDUPTA's reach. *Second*, all of State Farm's claims are based in fraud and thus must be pled with particularity pursuant to Federal Rule of Civil Procedure 9(b). Although the Complaint is lengthy and supported by dense spreadsheet exhibits that summarize multiple data points, State Farm nevertheless has failed to plead the "who, what, when, where, and how" of the alleged fraud scheme. *Third*, State Farm's unjust enrichment claim (Count IV) is improperly based on "wrongful" rather than "unjust" conduct, and the alleged wrong is not independent from the other wrongs alleged or pled in the alternative. *Fourth*, and finally, the Court should deny State Farm's open-ended, speculative, and misguided request for a declaratory judgment because the fraud allegations upon which it rests are not pled with the requisite particularity.

## II.    Legal Standards

A court may dismiss an action, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A court is not required to accept as true a legal conclusion couched as a factual allegation, conclusory allegations devoid of any reference to actual events, or allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *Iqbal,* 556 U.S. at 678. In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293–94 (11th Cir. 2010).

Claims based in fraud must be pleaded with particularity under Federal Rule of Civil Procedure 9(b). *See* Fed. R. Civ. P. 9(b) (when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). The particularity requirement set forth by Rule 9(b) requires plaintiffs to allege the "who, what, when, where, and how" of the supposed fraud or mistake. *AstroTel, Inc. v. Verizon Fla., LLC*, No. 8:11-cv-2224, 2012 WL 1581596, at *6 (M.D. Fla. May 4, 2012) (Covington, J.). If a fraud-based claim falls short of Rule 9(b)'s heightened pleading requirement, it should be dismissed. *Find What Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011), *cited by Morro v. Fed. Nat'l Mortg. Ass'n*, No. 6:13-cv-1309, 2014 WL 12625455, at *3 (M.D. Fla. May 12, 2014) (Honeywell, J.).

In this case, Rule 9(b) requires State Farm to allege—in each cause of action and with respect to each party against whom State Farm has brought each claim—(1) precisely what statements or omissions were made (and in which documents or

oral representations), (2) the time and place of each such statement, (3) the content of such statements, (3) how such statement misled State Farm, and (4) what the defendant obtained as a consequence of the fraud. *See Morro*, 2014 WL 12625455, at *3 (quoting *FindWhat.com*, 658 F.3d at 1296).

### III.   The Court should dismiss the Complaint.

For the following reasons, the Court should dismiss the Complaint in its entirety.

#### A.   Counts II and III must be dismissed because FDUTPA does not apply to Defendants or their alleged activities.

The Florida Deceptive and Unfair Trade Practices Act (section 501.201, *et seq.,* Florida Statutes ("FDUTPA")), by its terms, "does not apply to . . . [a]ny person or activity regulated under the laws administered by the former Department of Insurance which are now administered by the Department of Financial Services." § 501.212(4)(d), Fla. Stat.[1]   As discussed below, the Department of Financial Services ("DFS") administers laws that regulate FMCC as an entity, as well as Drs. Fakhoury and Shanawany in their individual capacities. Similarly, DFS has statutory authority to investigate and prosecute the purported

---

[1] FDUTPA also does not apply to persons and activities regulated under laws administered by the Office of Insurance Regulation. *See* § 501.212(4)(a), Fla. Stat. In fact, "State Farm Mutual Automobile Insurance Company, as its name reflects, is an insurance company," and thus, "no cause of action may be maintained *against* it under the Florida Deceptive and Unfair Trade Practices Act." *Antoine v. State Farm Mut. Auto. Ins. Co.*, 662 F. Supp. 2d 1318, 1326 (M.D. Fla. 2009) (emphasis added), *discussed by Farmer v. Humana, Inc.,* 582 F. Supp. 3d 1176, 1190 (M.D. Fla. 2022) (dismissing FDUTPA claim brought against an insurer deemed a "person" against whom FDUTPA does not apply). In the interest of upholding the principles of comity and fairness, State Farm should not be permitted to use its status as a "person" against whom FDUTPA may not apply as both a sword and shield. If it cannot be sued in a private cause of action under FDUTPA, it should not be permitted to assert such claims against others.

illegal activity described in State Farm's Complaint, including the submission of illegal reimbursement claims in violation of the Florida No-Fault Law and the Insurance Fraud Statute.  Accordingly, Counts 2 and 3 must be dismissed as a matter of law.

The Florida Legislature has multiple statutes that prohibit unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices. FDUTPA is one such statute; it broadly regulates such methods, acts, and practices "in the conduct of any trade or commerce." *Id.* at § 501.202. Another such statute, the Unfair Insurance Trade Practices Act ("UITPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices," but it is specific to the insurance industry. § 626.9541, Fla. Stat. DFS is responsible for enforcing the UITPA. *See id.* at § 626.989(2).

Indeed, if DFS believes that "a person has engaged in, or is engaging in, a fraudulent insurance act," or an act or practice that violates the UITPA, Insurance Fraud Statute, or the Insurance Code, the DFS "may administer oaths and affirmations, request the attendance of witnesses or proffering of matter, and collect evidence." *Id.* The enforcement division of the DFS may also serve subpoenas, execute search warrants, and even make arrests for criminal violations of the UITPA. *See id.* Thus, DFS has express statutory authority to investigate Defendants' purported violations of the Insurance Fraud Statute and other "fraudulent insurance acts" proscribed by UITPA. *See id.; see also id.* at § (1)(a)(1) (defining "fraudulent insurance acts"). Stated differently, DFS is responsible for

administering multiple laws that govern Defendants, which means that Defendants are "persons" to whom FDUTPA does not apply. *See* § 501.212(4)(d), Fla. Stat. (FDUTPA, by its terms, does not apply to "[a]ny person . . . regulated under the laws administered by the [DFS]").

Moreover, DFS is responsible for administering laws regulating Defendants' "activities" at issue in Counts II and III. *See id.* (FDUTPA, by its terms, does not apply to and "activity regulated under the laws administered by the [DFS]"). In fact, DFS is specifically authorized to investigate and prosecute conduct that, according to State Farm, purportedly rendered FMCC's claims "unlawful" and, therefore, non-reimbursable, as follows:

| Defendants' activities alleged in Counts II and III | Activities DFS regulates |
|---|---|
| In violation of the Insurance Fraud Statute, falsely stating in reimbursement claims that: <br> • FMCC was exempt from the Health Care Clinic Act ("HCCA"). (D.E. 1 ¶ 68). <br> • FMCC's services were lawful and compensable. (*Id.* ¶ 69). <br> • FMCC patients suffered emergency medical conditions. (*Id.* ¶ 83). <br> • providers were properly licensed and rendered compensable services. (*Id.* ¶ 84). | The presentation of "any written or oral statement as part of, or in support of, a claim for payment or other benefit pursuant to an insurance policy . . . knowing that such statement contains any false, incomplete, or misleading information concerning any fact or thing material to such claim." Insurance Fraud Statute (§ 817.234(1)(a)(1), Fla. Stat.), *cited in* UITPA (§ 626.989(2), Fla. Stat.). |
| Presenting a false claim for payment, in violation of UITPA. (*Id.* ¶ 70). | The making of "false claims" or "obtaining or retaining money dishonestly" by "present[ing] to any insurer a false claim for payment, knowing the same to be false . . . ." UITPA at §§ 626.9541(1)(u), 626.989(1)(a), Fla. Stat. |

| Defendants' activities alleged in Counts II and III | Activities DFS regulates |
|---|---|
| Failing to supervise FMCC's business activities and ensure its legal compliance, in violation of the HCAA. (*Id.* ¶ 77). | "Knowingly submit[ting a] claim for payment pursuant to a [PIP] policy under the . . . No-Fault Law . . . [having] knowingly submitted a false, misleading, or fraudulent application or other document when . . . seeking an exemption from licensure as a health care clinic, or demonstrating compliance with [the HCCA]." UITPA at § 626.989(2)(b), Fla. Stat.<br><br>"Knowingly submit[ting a] false, misleading, or fraudulent application or other document when . . . seeking an exemption from licensure as a health care clinic, or demonstrating compliance with [the HCCA] . . . to provide services or seek reimbursement under the . . . No-Fault Law." *Id.* at § (2)(a). |
| Failing to make a good faith effort to collect copayments and deductibles, in violation of the Insurance Fraud Statute. ((*Id.* ¶ 87). | Engaging in a "general business practice of billing amounts as its usual and customary charge, if such provider has agreed with the insured or intends to waive deductibles or copayments, or does not for any other reason intend to collect the total amount of such charge." Insurance Fraud Statute (§ 817.234(7)(a), Fla. Stat.), *cited in* UITPA (§ 626.989(2), Fla. Stat.). |
| In violation of the No-Fault Law, falsely stating that<br>• FMCC patients suffered emergency medical conditions. (*Id.* ¶ 83).<br>• providers were properly licensed and rendered compensable services. (*Id.* ¶ 84). | "Knowingly and with intent to defraud present[ing], caus[ing] to be presented . . . any written statement . . . in support of . . . a claim for payment . . . pursuant to any insurance policy, which the person knows to contain materially false information concerning any fact material thereto or . . . conceal[ing], for the purpose of misleading another, information concerning any fact material thereto." UITPA (§ 626.989(1)(a)(1), Fla. Stat.). |

Thus, FDUPTA "does not apply" to Defendants or their purported activities

alleged in Counts II and III because the Defendants are "regulated under the laws . . . administered by the Department of Financial Services." § 501.212(4)(d), Fla. Stat. Consequently, Counts II and III of State Farm's Complaint, which arise from alleged violations of FDUTPA, must be dismissed.

The FMCC Defendants acknowledge that a court within this District previously rejected the argument that the submission of PIP claims is subject to the regulatory authority of DFS and is therefore exempt from FDUPTA. *See State Farm Mut. Auto. Ins. Co. v. LaRocca*, No. 8:21-cv-2536, 2022 WL 1401565 (M.D. Fla., May 3, 2022) (Bucklew, J.). However, a different result is warranted in this case. In *LaRocca*, as in this case, State Farm accused multiple health care providers of a scheme to collect no-fault insurance benefits for chiropractic care and medical services that were not medically necessary or lawfully rendered. *Id.*, at *1. The *LaRocca* defendants argued for dismissal of State Farm's FDUPTA counts based on a 2012 amendment to the No-Fault Law, codified at section 627.736(4)(i), Florida Statutes, which requires potentially fraudulent insurance acts to "be reported to the [DFS'] Division of Investigative and Forensic Services." *Id.*, at *7. The *LaRocca* defendants argued that, by adding paragraph (4)(i) to the PIP statute, the legislature "placed the activity at issue in State Farm's claim squarely within the regulatory authority of the DFS." *Id.*

Based on the arguments presented, Judge Bucklew held that the "conduct at issue is not exempt from the FDUTPA" because State Farm's complaint was "not about whether Plaintiffs reported to the DFS claims denied for potentially

fraudulent insurance." *Id*., at *8. Rather, Judge Bucklew explained, "this case and the conduct on which the FDUTPA claim is based concern Defendants' submission of fraudulent bills and records for medically unnecessary and unlawful chiropractic and medical services." *Id.*

Based on this commonsense analysis, Judge Bucklew distinguished a prior Middle District of Florida case, *Quilty v. Envision Healthcare Corp.*, No. 8:18-cv-341, 2018 WL 2445824 (M.D. Fla. May 31, 2018) (Covington, J.), *appeal dismissed*, 2018 WL 8693942 (11th Cir. Oct. 10, 2018). In *Quilty*, Judge Covington held that FDUPTA was not applicable to the so-called "balance billing" scheme described in the complaint because that activity was prohibited by "the HMO Act, within the Insurance Code," which was enforced by the Florida Office of Insurance Regulation ("OIR"). 2018 WL 2445824, at *6–7. The *Quilty* court held, therefore, that "Quilty's claim cannot be enforced through FDUTPA, as improper balance-billing is an activity regulated by the OIR." *Id,* at *6.

In this case, Defendants are *not* relying on the 2012 amendment to the No-Fault Law to argue that FDUPTA is inapplicable to them or their activities. Instead, Defendants rely on section 626.989, Florida Statutes, which expressly authorizes DFS (through its Division of Investigative and Forensic Services) to investigate anyone believed to be "engaged in . . . an act or practice that violates [UITPA] or [the Insurance Fraud Statute]." § 626.989, Fla. Stat.

And there is no doubt that Counts II and III are based on alleged activities that violate the Insurance Fraud Statute (*see* D.E. 1 ¶¶ 68–69, 82–87), the UITPA

(*see id.* ¶¶ 70, 73), and the HCCA (*see id.* ¶¶ 68, 77).[2] These statutes, which are all administered by DFS, regulate Defendants' "activities" alleged in Counts II and III. Because FDUPTA is "inapplicable" to Defendants' activities, all of which are regulated by DFS, dismissal of Counts II and III is warranted.

### B.   State Farm's FDUTPA claims must be dismissed because they are not pled with particularity.

"Most courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b)." *Stires v. Carnival Corp.*, 243 F. Supp. 2d 1313, 1322 (M.D. Fla. 2002) (Presnell, J.) (dismissing claim arising from the Florida Deceptive and Unfair Trade Practices Act (hereafter, "FDUTPA") for insufficient particularity under Rule 9(b)) (collecting cases similarly disposing of insufficiently pleaded FDUTPA claims), *cited by Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1289 (M.D. Fla. 2009) (Steele, J.) (collecting cases within this District where Rule 9(b) was applied to FDUTPA claims). "In light of this trend, claims arising under the FDUTPA must be pled with particularity." *Fla. Digit. Network v. N. Telecom, Inc.*, No. 6:06-cv-889, 2006 WL 2523163 at *5 (M.D. Fla. Aug. 30, 2006) (Presnell, J.) (dismissing FDUTPA claim incorporating "vague and conclusory allegations" as insufficient under Rule 9(b)).

---

[2] While the HCCA dictates that claims submitted by unlicensed (or non-exempt) clinics are unlawful and non-compensable (*see* § 400.9935(3), Fla. Stat.), the Insurance Fraud Statute (§ 817.234, Fla. Stat.) also prohibits the submission of such unlawful claims. (*See* also D.E. 1 ¶ 68). Thus, the DFS administers laws prohibiting HCCA violations as well. *See* UITPA (§ 626.989(2), Fla. Stat.) (citing Insurance Fraud Statute).

**1. Count II, which arises from the HCCA, must be dismissed for failing to allege the "who, what, when, where, and how" of Dr. Fakhoury's purportedly inadequate supervision.**

In Count II, State Farm alleges that FMCC lacked the requisite license required by the HCCA and, consequently, all the claims it submitted to State Farm were "unlawful" in violation of the Insurance Fraud Statute.[3] (*See* D.E. 1 ¶¶ 65–69). State Farm makes the conclusory allegation, unadorned by facts, that FMCC is ineligible for the "wholly-owned" exemption to the HCCA's licensing requirement because Dr. Fakhoury "fail[e]d to supervise the business activities of FMCC and ensure its compliance with all federal and state laws." (*Id.* ¶ 65).

State Farm purports to offer "specifics" in the Complaint, but only supplies more conclusions, such as "Dr. Fakhoury failed to address . . . fraudulent and unlawful conduct." (*Id.* ¶ 3). Similarly, without citing any particular dates, names, documents or statements, State Farm offers broad and categorical descriptions of purported illegal conduct including that: (a) "Dr. Shanawany falsely represented nearly every patient . . . suffered from an emergency medical condition ('EMC')" which, according to State Farm, "is simply not credible . . . [for auto accident]

---

[3] Although Defendants acknowledge the Court must accept State Farm's allegations as true for purposes of this Motion, State Farm's accusation that FMCC was ineligible for its "claimed exemption" (*see, e.g.,* D.E. 1 ¶¶ 2, 77) is categorically false. *See* Florida Health Finder profile of FMCC, Fla. Agency for Health Care Admin., https://quality.healthfinder.fl. gov/facilitylocator/facloc.aspx (choose "Search by Facility Type/Location;" then select "Health Care Clinic Exemption" from Facility/Provider Type dropdown; then type "Fakhoury Medical" to the right of "Name;" then press "Search;" then click hyperlinked search result to view FMCC's profile) (last visited May 30, 2023) (showing FMCC received licensing exemption number 16857). *See also* § 400.9935(6), Fla. Stat.; Fla. Admin. Code r. 59A-33.006.

patients of FMCC . . . [who] suffer from commonplace, soft tissue injuries;" (b) FMCC billed for manual therapy . . . for massages provided by licensed massage therapists ('LMT'); and (c) "FMCC [did] not engage in a good faith effort to collect copayments and deductibles from patients . . . ." (*Id.*).

To hide its pleading deficiencies, State Farm attaches multiple exhibits with lengthy and detailed spreadsheets with numerous data fields that, upon first glance, seem to provide far more detail than Rule 9(b) requires. Upon closer inspection, however, State Farm's  details are not relevant to the purported fraud scheme and are, instead, mere demographic information including, for example: (i) the patient's initials, (ii) the dates of service, (iii) the date of the initial exam, (iii) the patient's diagnosed conditions, and (iv) whether an EMC was declared. (*See, e.g.,* D.E. 1–1).

State Farm does not, however: (i) specify which of the EMC determinations were falsified or unsupported by the medical record; (ii) identify which patient diagnoses supporting the EMC determination were purportedly fake; (iii) identify any specific documents from each patient's medical chart where "false" statements were made to support the EMC determination ;" (iv) identify the dates of service, or the specific medical items and services, that were purportedly "predetermined," "unlawful," or "unnecessary;" or (v) identify which LMTs purportedly rendered the massage therapy; or (vi) note the date of each purportedly "unlawful" massage." (*See generally id.* (omitting particularized facts); D.E. 1 ¶¶ 63–79 (same)). Thus, if the Court disregards the conclusive statements within the Complaint, as well as the

inconsequential data fields in State Farm's exhibits, it is clear that State Farm failed to specify the "who, what, when, where, and how" relevant to the alleged fraudulent scheme. *AstroTel, Inc.* 2012 WL 1581596, at *6.

State Farm did not allege, for example, that Dr. Fakhoury was only physically present at FMCC certain days of the week or month,[4] that he failed to review a specified number of patient charts from specific health care providers or during specified time frames, that he failed to adequately supervise specified healthcare providers or specified procedures, that he failed to detect particular claims for "manual therapy" that were in fact massages provided by LMTs, or identify particular therapists that purportedly rendered such non-reimbursable services. Thus, Defendants have not been fairly apprised of the fraud they're accused of; instead, Defendants are left to search aimlessly through dozens of pages of claims data, and thousands of pages of medical charts, with no indication of where the purported fraud can be found. Under such circumstances, dismissal is proper. *See FindWhat.com*, 658 F.3d at 1296.

State Farm's FDUTPA claim here is more akin to its FDUTPA claim in *State Farm Mutual Automobile Insurance Co. v. Performance Orthopaedics & Neurosurgery, LLC,* No. 1:17-cv-20028, 2018 WL 2186496, at *6 (S.D. Fla. Feb. 16, 2018). There, a sister district court dismissed a nearly identical FDUTPA claim

---

[4] *Cf. State Farm Mut. Auto. Ins. Co. v. Advantacare of Fla., LLC,* No. 6:19-cv-1837, 2020 WL 2630226 (M.D. Fla. May 22, 2020) (finding State Farm satisfied Rule 9(b) in alleging HCCA violation because State Farm provided "specific examples of ways [the medical director] failed to supervise" the clinic, including that the medical director was present at merely one of the clinic's seven offices only once per month).

based on an alleged HCCA violation because State Farm only offered bare legal conclusions in alleging that the defendant clinic was a "clinic" as defined by the HCCA, such that the HCCA's licensing requirements applied to the defendants. *See id.* (quoting *Am. Dental,* 605 F.3d at 1290 (explaining that courts considering a motion to dismiss may "eliminate any allegations in the complaint that are merely legal conclusions")). Notably, the court dismissed that case even though—and unlike here—State Farm's complaint included "detail[ed] examples of lapses in supervisory duties." *Performance Orthopaedics,* 2018 WL 2186496, at *9. State Farm supplied even fewer detailed examples here, further indicating that dismissal is warranted.

Although the legal conclusions improperly pleaded by State Farm here pertain to a different requirement for the HCCA's licensing exemption (*i.e.,* an owner's supervision and legal compliance obligation), this Court should reach the same conclusion as the *Performance Orthopaedics* court, and for the same reason: State Farm must do more than offer legal conclusions masquerading as facts to state a FDUTPA claim that meets Rule 9(b). Because State Farm's allegation that Dr. Fakhoury "fail[e]d to supervise the business activities of FMCC and ensure its compliance with all federal and state laws" (D.E. 1 ¶ 65) is nothing more than a legal conclusion, the Court should dismiss Count II under Rule 9(b).

### 2. Count III, which arises from the Insurance Fraud Statute, should be dismissed for failing to meet Rule 9(b).

In Count III, State Farm alleges that Defendants violated the Insurance

Fraud Statute and, thus, FDUTPA by making "false" determinations that patients were suffering from EMCs when, in fact, they were not. (*Id.* ¶¶ 83, 87–89). In a half-hearted attempt to satisfy Rule 9(b), State Farm attached to its Complaint a spreadsheet "summary" of Dr. Shanawany's EMC determinations relating to 569 patients. (*See generally* D.E. 1-1). To be clear, the summary indicates that Dr. Shanawany *did not* determine that all 569 patients included therein were deemed to be suffering from an EMC. (*See id.* (noting in column whether EMCs were declared)). Moreover, the spreadsheet does not indicate which of the EMC determinations are fraudulent, which of the medical diagnoses supporting the EMC determinations were false, which opinions regarding the patients' medical distress were false or unfounded, or whether any specific patients' medical charts contained a false statement by Dr. Shanawany supporting his EMC determinations (let alone the date on, or the specific document in which, he made such statements).

Rather, the spreadsheet summarizes—with no effort to distinguish between fraudulent and legitimate EMC determinations—which of the 569 patients complained of neck, midback, and/or lower back pain; had a diagnosis of cervicalgia, thoracalgia, and/or lumbargo; were deemed not to be in "acute distress" when examined; or whether Dr. Shanawany ultimately declared an EMC. (*See id.*). The summary also lists the claim numbers associated with the 569 patients, the patients' initials and ages, the dates of each patient's loss, and the date of Dr. Shanawany's initial examination of each patient (*i.e., not necessarily* when

16

any of the allegedly false or fraudulent statements, diagnoses, or EMC declarations were made). (*See id.*). None of these details aid Defendants in ascertaining the "who, what, when, where, and how" of the alleged fraud.

Similarly, Count III is predicated on the allegation that FMCC fraudulently billed State Farm for "manual therapy" when, in reality, massage services had been rendered by LMTs. (D.E. 1 ¶¶ 34, 84). Predictably, State Farm's scattershot spreadsheet exhibit lists the initials of every patient that received manual therapy, the associated claim numbers, the patients' respective dates of loss, the dates of the patients' first and last visits, and the total number of visits wherein "manual therapy" was provided. (*See* D.E. 1-8). The summary does not indicate the date when the non-reimbursable massages were rendered, who rendered the massages, the practice location where the massages was rendered, which documents in the patients' medical charts purportedly contained false or misleading statements regarding services rendered, or when the false claims for "manual therapy" were submitted to, or paid by, State Farm.

Finally, Count III alleges that Defendants violated the Insurance Fraud Statute (and, thus, FDUTPA) by failing to make a "good faith attempt" to collect copayments and deductibles from patients. (D.E. 1 ¶¶ 85—87). In support, State Farm submits a sampling of redacted transcripts of examinations under oath, which were conducted by State Farm, in which State Farm insureds testify that they did not pay any out-of-pocket money to FMCC for the services they received. (*See generally* D.E. 1-11, 1-15, 1-16, 1-17, 1-18).

State Farm does not satisfy the heightened pleading standard applicable to FDUTPA claims by merely offering a legal conclusion that Defendants "violated the Insurance Fraud Statute by engaging in a general business practice of waiving (or failing to make a good faith effort to collect) copayments and deductibles" (D.E. 1 ¶ 85), then quoting the Insurance Fraud Statute (*id.* ¶ 86), and then repeating its own conclusion (*id.* ¶ 87). As stated above, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Am. Dental,* 605 F.3d at 1290 (explaining that courts considering a motion to dismiss may "eliminate any allegations in the complaint that are merely legal conclusions")).

And the few pages of testimony from State Farm insureds attached to the Complaint as exhibits do not "contain sufficient factual matter, accepted as true, to state a claim to relief [under FDUTPA] that is plausible on its face." *Iqbal*, 556 U.S. at 678. For example, State Farm does not indicate which patients' co-payments or deductibles were waived, the dates that such co-payments or deductibles were due but not collected, whether any patients submitted documentation to FMCC to prove financial hardship, whether FMCC made phone calls or sent letters to urge patients to submit co-payments or deductibles, or whether any of the patients were referred to collection agencies.

Thus, despite State Farm's efforts to conceal its pleading deficiencies with conclusory allegations and irrelevantly detailed spreadsheets, Count III should be dismissed because it fails to allege fraud with the particularity required by Rule

9(b). *See AstroTel, Inc.*, 2012 WL 1581596, at *6 (to survive dismissal under Rule

9(b), a plaintiff must allege the "who, what, when, where, and how" of the supposed

fraud or mistake).

### 3. Count III should be dismissed because a physician's medical opinion cannot be deceptive, misleading, an unfair practice, or a false statement under FDUPTA.

In addition to insufficiently pled, Count III should be dismissed because

State Farm cannot plausibly claim that Dr. Shanawany's EMC determinations are

actionable "false statements." *See Twombly,* 550 U.S. at 570 (to survive a motion

to dismiss, factual allegations must be sufficient "to state a claim to relief that is

plausible on its face"). A physician's opinion is not an "untrue statement of material

fact . . . regardless of whether [State Farm] can ultimately prove the belief wrong."

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175,

186 (2015) (in complaint arising from Securities Act of 1933, investors failed to

state a claim for an untrue statement of material fact in a securities registration

statement).

### C. The Court Should Dismiss State Farm's Fraud-Based Unjust Enrichment Claim

The unjust enrichment claim fails for the reasons set forth below, so the

Court should dismiss it.

### 1. The unjust enrichment claim fails to meet Rule 9(b).

In Count I, State Farm alleges that Defendants intended to mislead State

Farm into believing, and that State Farm indeed believed, it was legally obligated

to pay Defendants' reimbursement claims. (D.E. 1 ¶¶ 60—61). State Farm asserts that, in fact, it was not obligated to pay Defendants' claims because they consisted of charges for unlawful services, and thus all previous reimbursement payments from State Farm to Defendants unjustly enriched Defendants. (*Id.*). Because an alleged fraudulent misrepresentation is at the heart of State Farm's unjust enrichment claim, Count I must be pleaded with particularity. *See, e.g., Allstate Indem. Co. v. Fla. Rehab & Injury Ctrs. Longwood, Inc.*, No. 6:15-cv-1740, 2016 WL 7177624, at *3 (M.D. Fla. July 26, 2016) (Mendoza, J.) (in action by an insurer against providers who treated insureds and were reimbursed with PIP benefits, dismissing similarly deficient fraud-based unjust enrichment claim under Rule 9(b)).

Count I is insufficiently particularized and, therefore, fails to meet Rule 9(b)'s heightened pleading standard. In Count 1, State Farm generally alleged that *all* Defendants, collectively, were unjustly enriched by State Farm's reimbursement of "their claims" relating to unspecified health care services that *all* Defendants purportedly rendered. (*See* D.E. 1 ¶¶ 58, 61—62). State Farm uniformly characterized Defendants' services as "unlawful," and seeks to recover over $2.5 million in PIP benefits that State Farm previously paid to FMCC for providing those "unlawful" services. (*See id.*).

Rule 9(b) requires State Farm to differentiate between and among each of Defendants so that each Defendant can decipher what particular conduct he is accused of committing, and how his conduct caused him to become allegedly

20

unjustly enriched. *See Allstate*, 2016 WL 7177624, at *3 (dismissing auto insurer's fraud-based claims against clinic, its owners, and its employee-providers under Rule 9(b) for "failure to clearly distinguish between the actions of multiple Defendants"). By alleging Count 1 so broadly, State Farm commits the "sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions." *Weiland v. Palm Beach Sheriff's Dep't*, 792 F.3d 1313, 1323 (11th Cir. 2015).

The supplemental information supplied by exhibits to the Complaint does not cure the pleading deficiencies of Count 1. Consider, for example, the spreadsheet attached to the Complaint as Exhibit 3, which State Farm identifies as pertinent to Count 1. (*See* D.E. 1 ¶ 58; D.E. 1-3). For each of the 543 patients treated by FMCC in exchange for reimbursement payments from State Farm, Exhibit 3 provides: (1) the corresponding claim number assigned by State Farm; (2) the patients' initials; (3) which State Farm subsidiary paid FMCC's claims; (4) the date of loss; (5) the dates of the patient's first and last visits to FMCC; (6) the total amount of "bills submitted" by FMCC to State Farm; (7) the total "amount paid (PIP)"; and, if applicable, (8) the total "amount paid (MPC)."[5] (*See* D.E. 1-3). Thus, neither Count I nor Exhibit 3 indicates what particular conduct each Defendant is accused of committing, or how each Defendant's alleged conduct caused him to

---

[5] "MPC" refers to Medical Payments Coverage, which State Farm defines as "an optional insurance coverage that . . . covers the 20% PIP copayment [owed to providers] for which the insured would otherwise be responsible and also allows an insured to elect additional medical coverage above the PIP benefits minimum policy limits required by Florida law." (D.E. 1 ¶ 20).

become unjustly enriched vis-à-vis State Farm. Because Count I fails to specify "which of the defendants are responsible for which acts," it should be dismissed. *Weiland,* 792 F. 3d at 1323.

### 2. Count I should be dismissed because it is based on the same wrongful conduct alleged in Counts II and III.

State Farm's "unjust enrichment claim is not based on a mistake by which [Defendants] unjustifiably came to hold [State Farm's] property and should be required to return it." *AstroTel*, 2012 WL 1581596, at *10. Instead, it is based on Defendants' alleged *wrongful* conduct, as are State Farm's other causes of action for damages. (*Compare* D.E. 1 ¶¶ 58—62 (Defendants' alleged scheme to defraud State Farm by submitting claims for unlawful and non-reimbursable services as the basis for State Farm's unjust enrichment claim) *with id.* ¶¶ 68—72 (same wrongful conduct as the basis for Count II) *and id.* ¶¶ 81—87 (same wrongful conduct as the basis for Count III)).

As the Eleventh Circuit has recognized, "[t]he law of unjust enrichment is concerned solely with enrichments that are unjust independently of wrongs and contracts." *Flint v. ABB, Inc.*, 337 F.3d 1326, 1331 n.2 (11th Cir. 2003). Thus, "when the plaintiff relies on a wrong to supply the 'unjust factor,' the causative event is a *wrongful* enrichment rather than an *unjust* enrichment." *AstroTel*, 2012 WL 1581596, at *10 (quoting *Flint*, 337 F.3d at 1331) (emphasis added); *see also Guyana Tel. & Tel. Co., Ltd. v. Melbourne Int'l Commc'ns, Ltd.*, 329 F.3d 1241, 1245 n.3 (11th Cir. 2003); *Electrostim Med. Servs., Inc. v. Lindsey*, No. 8:11-cv-

2467, 2012 WL 1560647, at *4 (M.D. Fla. May 2, 2012) ("Liability in unjust enrichment has in principle nothing to do with fault."); *Tilton v. Playboy Ent. Grp., Inc.*, No. 8:05-cv-692, 2007 WL 80858, at *3 (M.D. Fla. Jan. 8, 2007); *State of Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288 (S.D. Fla. 2005).

In other words, unjust enrichment claims are mutually exclusive of actions in tort or statutory law for damages[6] when all such claims are based on a common set of allegations of wrongful conduct. Applied here, Count I for unjust enrichment is based on the same allegations of Defendants' wrongful conduct upon which State Farm's other claims for damages (*i.e.,* Counts II and III under FDUTPA) are based. (*See* D.E. 1 ¶¶ 58—62, 68—72, 81—87). As such, State Farm's "right of recovery, if any, for the alleged wrongful conduct [of Defendants] arises in tort or statutory law, which, if proven, might entitle [State Farm] to damages, rather than unjust enrichment." *AstroTel*, 2012 WL 1581596, at *10.

Occasionally, courts permit unjust enrichment claims to survive dismissal even if the claims are premised on wrongful conduct upon which other causes of action for damages are based. *See, e.g., State Farm Mut. Auto. Ins. Co. v. LaRocca*, No. 8:21-cv-2536, 2022 WL 1401565, at *6 (M.D. Fla. May 3, 2022) (Bucklew, J.)

---

[6] Similarly, contract actions cannot be asserted alongside unjust enrichment claims. *See Cent. Magnetic Imaging Open MRI of Plantation, Ltd. v. State Farm Mut. Auto. Ins. Co.*, 789 F. Supp. 1311, 1317 (S.D. Fla. 2011). Under Florida's PIP regime, the relationship between the insurer and the insured is contractual. *See Nationwide*, 657 F. Supp. 2d at 1289. Indeed, "[t]he purpose of a PIP suit is to recover damages for breach of an insurance contract." *State Farm Mut. Ins. Co. v. Nichols*, 932 So. 2d 1067, 1072 (Fla. 2006); *see also Allstate Ins. Co. v. Kaklamanos*, 843 So. 2d 885, 892 (Fla. 2003) ("[I]t is clear that actions for PIP benefits are based on the insurance contract and thus are governed by contract principles."). Because this contractual relationship exists in this case, State Farm's unjust enrichment claim fails.

(discussing split among district courts and collecting cases); *Gov't Emps. Ins. Co. v. Kalin,* No. 8:21-cv-2556, 2022 WL 613808, at *4 (M.D. Fla. Mar. 2, 2022) (same). This approach recognizes that although an unjust enrichment claim fails when a defendant gives adequate consideration for the benefit conferred, unlawfully rendered services cannot qualify as adequate consideration for PIP reimbursement claims. *LaRocca*, 2022 WL 1401565, at *6 n.11 (citing *State Farm Fire & Cas. Co. v. Silver Star Health & Rehab Inc.,* 739 F.3d 579, 584 (11th Cir. 2013)). Thus, where a plaintiff pleads unjust enrichment *in the alternative* to actions for damages, the unjust enrichment claim may survive dismissal notwithstanding that all causes of action arise from a common set of allegations of wrongful conduct. *See AIM Recycling of Fla., LLC v. Metals USA, Inc.,* No. 18-cv-60292, 2019 WL 1991946, at *2 (S.D. Fla. Mar. 4, 2019), *discussed by Kalin,* 2022 WL 613808, at *4.

Here, however, State Farm did not plead its unjust enrichment claim in the alternative to its other causes of action for damages based on wrongful conduct, either expressly or impliedly. *Cf. id.* Rather, *all four* of State Farm's causes of action arise from Defendants' alleged submission of reimbursement claims to State Farm for unlawful and non-reimbursable services (*see* D.E. 1 ¶¶ 58—62, 68—72, 81—87, 96), and *all four* claims incorporate the same set of factual allegations from the body of the Complaint (*see id.* ¶¶ 57, 63, 80, 94 (incorporating paragraphs 1 through 56 into all four causes of action)). Because State Farm's unjust enrichment claim is premised on wrongful conduct that cannot be differentiated from the other

torts alleged, "especially given that each count in the complaint incorporates the same set of paragraphs from the body of the complaint," the Court cannot reasonably infer that unjust enrichment is pled in the alternative to State Farm's claims for damages, in anticipation of a claim by Defendants' that they committed no wrong. *State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1267 (M.D. Fla. 2021) (Covington, J.) (dismissing State Farm's unjust enrichment claim as premised on wrongful conduct that could not be differentiated from other torts alleged); *cf. LaRocca,* 2022 WL 1401565, at *7.

Lastly, "[i]t is well settled in Florida that unjust enrichment is an equitable remedy and is, therefore, not available where there is an adequate legal remedy. Thus, to properly state a claim for unjust enrichment, a party must allege that no adequate legal remedy exists." *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (Hodges, J.). Here, State Farm failed to plead that it lacks an adequate legal remedy. (*See generally* D.E. 1). To the contrary, through Counts II and III, State Farm seeks money damages to remediate its alleged harm suffered by the same wrongs described in Count I for unjust enrichment. Moreover, the Complaint includes a "Demand for Jury Trial" (D.E. 1 at 35), which is a further admission by State Farm that it has an adequate remedy at law. *See, e.g., Skytruck Co., LLC v. Sikorsky Aircraft Corp.*, No. 2:09-cv-267, 2011 WL 13137386, at *4 (M.D. Fla. Nov. 15, 2011) (holding that "a claim for unjust enrichment is an equitable claim that is tried to the Court, not to a jury"); *Media Servs. Grp., Inc. v. Bay Cities Commc'ns, Inc.*, 237 F.3d 1326,

1328 n.2 (11th Cir. 2001) (same).

> **D.     State Farm is not entitled to declaratory relief, and the Court is not required to entertain State Farm's claim.**

In Count IV, State Farm seeks a declaration that *all* of FMCC's claims for reimbursement—including claims predating this case and any claims that may be submitted during its pendency—relate to health care services that were not lawful when rendered and contain false statements and, therefore, no such claims and charges are owed to Defendants by State Farm. (*See* D.E. 1 ¶ 96). In other words, State Farm requests the Court to declare that every service provided by Defendants to hundreds of patients, and every reimbursement claim Defendants sent to State Farm, were fraudulent, as are all future reimbursements claims that Defendants may submit to State Farm. (*See id.*).

State Farm must do more than offer legal conclusions that the FMCC Defendants' previous services were unlawful and that all future services will be unlawful as well; and State Farm must do more than attach summary exhibits that detail a selection of claim numbers, patient initials, and amounts of reimbursement previously sought by the FMCC Defendants. (*See id.* (citing D.E. 1-3, D.E. 1-4)); *see also AstroTel, Inc.*, 2012 WL 1581596, at *6 (to survive dismissal under Rule 9(b), a plaintiff must allege the "who, what, when, where, and how" of the supposed fraud or mistake); *State Farm Auto Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1330–31 (S.D. Fla. 2017) (dismissing similar count for declaratory relief).

As with Counts I through III, despite State Farm's efforts to conceal its pleading deficiencies with conclusory allegations and irrelevantly detailed spreadsheets, Count IV also fails to allege fraud with the particularity required by Rule 9(b). *See Sun Life Assurance Co. of Can. (U.S.) v. Imperial Holdings, Inc.*, No. 13-cv-80385, 2014 WL 12452450, at *8 (S.D. Fla. June 26, 2014) (dismissing declaratory judgment claim based on fraud as deficiently pleaded under Rule 9(b)); *Bamert v. Pulte Home Corp.*, No. 6:08-cv-2120, 2012 WL 3292875, at *3 (M.D. Fla. Aug. 10, 2012) (Conway, J.) (same).

In the unlikely event the Court finds that Count IV is sufficiently pleaded under Rule 9(b), the Court may nevertheless exercise its discretion to decline to entertain the declaratory judgment claim. *See Blue Hill Invs., Ltd. v. Silva,* No. 1:15-cv-20733, 2015 WL 9319394, at *3 (S.D. Fla. Dec. 23, 2015), *quoted by Performance Orthopaedics,* 2018 WL 2186496, at *15–16. Indeed, even where a claim is adequately pled, "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act . . . ." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995). In fact, the Supreme Court has "repeatedly characterized the Declaratory Judgment Act as an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Id.* at 287 (internal citations and quotations omitted); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1137–38 (11th Cir. 2005) ("In short, the range of considerations available to the district court in deciding whether to entertain the declaratory action is vast and the deference afforded to its decision is

substantial.").

In this case, the Court should decline to consider State Farm's claim for declaratory relief because such adjudication would not serve a useful purpose. While courts have held that an insurer need not pay claims "if the claims are fraudulent," *see, e.g., Nationwide*, 657 F. Supp. 2d at 1285, a declaration that Defendants' claims are "not owed" would serve no useful purpose because that issue "will be resolved by another claim or affirmative defenses." *Gov't Emps. Ins. Co. v. Cereceda*, No. 19-cv-22206, 2020 WL 13220422, at *4 (S.D. Fla. Mar. 13, 2020) (alteration removed). Because Count IV is redundant and superfluous to Counts I, II, and III, the Court need not consider it as a separate cause of action. *See Banks v. USAA Cas. Ins. Co.*, No. 5:19-cv-189, 2019 WL 5265356, at *2 (M.D. Fla. May 10, 2019) (Moody, J.) ("Given that the Court concludes the [declaratory] relief is duplicative, the [plaintiffs] should consider whether it is worthwhile to seek a declaration—or at least the declaration they sought in the Complaint."). In such instances, "courts generally decline to entertain the declaratory judgment count." *Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1376 (S.D. Fla. 2019) (collecting cases)

## IV.  Conclusion

For the foregoing reasons, the Court should dismiss the Complaint and issue any further relief to Defendants that the Court deems just and proper.

## <u>Local Rule 3.01(g) Certification</u>

Counsel for Defendants certify that they conferred via email with counsel for Plaintiffs, who advised that Plaintiffs oppose the relief requested herein.

Dated: June 8, 2023                    Respectfully submitted,

**STUMPHAUZER KOLAYA**
**NADLER & SLOMAN, PLLC**
2 S. Biscayne Blvd., Ste. 1600
Miami, Florida 33131
Tel.:   (305) 614-1400
Fax:   (305) 614-1425

By: *Ryan K. Stumphauzer*
Ryan K. Stumphauzer (FBN: 12176)
Amy M. Bowers (FBN: 105755)
Email: rstumphauzer@sknlaw.com
            abowers@sknlaw.com

*Counsel for Defendants*